**7**

John SAID, Appellant,

v.

Richard LACKEY, Individually; Richard
Lackey, County Jailer; Earl Ping,
County Jailer; and Campbell County
Fiscal Court, Appellees.

Court of Appeals of Kentucky.

May 15, 1987.

Bernard J. Blau, Newport, for appellant.

Jay R. Langenbahn, Cincinnati, Ohio,
Paul Twehues, Newport, G. Benjamin Cow-
gill, Leslie Patterson, Lexington, for appel-
lees.

Before DUNN, Special Judge, and
GUDGEL and McDONALD, JJ.

McDONALD, Judge:

This is an appeal from a summary judg-
ment entered in Campbell Circuit Court
June 12, 1986, dismissing appellant's com-
plaint in a wrongful discharge action
against appellees, the Campbell County
Jailer and the Campbell County Fiscal
Court. Appellant's subsequent motion to
alter, amend, or vacate judgment was over-
ruled, and this appeal followed.

On February 11, 1985, John Said (appel-
lant) was hired as a Campbell County depu-
ty jailer and signed an agreement entitled
"Agreement to Accept Temporary Employ-
ment." Therein it provided:

2. I understand that this employment
is only on a temporary basis, and no
representations have been made to me by
any person that this employment is other
than temporary.

3. I agree that in the event the Fiscal
Court or Jailer elects not to employ me
on a permanent basis, that I may be
terminated at any time without notice or
cause.

4. I expressly understand and agree
that by reason of my temporary employ-
ment, I am not entitled to unemployment
compensation or any benefits or rights of
a permanent full-time employee (even
though some benefits may be granted to
me).

Thereafter, on October 10, 1985, a one-
sentence letter was handed to the appel-
lant, signed by the Campbell County Jailer,
Richard Lackey, notifying him that he was
discharged as of that date. A written de-
mand for a hearing in compliance with the
County Administrative Code was sent by
appellant's attorney on October 16th; no
reply being given, action was commenced
on October 23rd against Lackey, individual-
ly and as Campbell County Jailer, and
Campbell County Fiscal Court, alleging
wrongful discharge, constitutional viola-
tions, slander, and negligent/intentional in-
fliction of emotional harm. The complaint
was amended January 6, 1986, to include
Earl Ping, newly elected Campbell County
Jailer.

The case proceeded before the court on all parties' motions for summary judgment. Sustaining appellees' motion, the court based its decision on several factors, the first of which was the agreement of temporary employment which appellant signed. The trial court ruled that his employment was governed by KRS 71.060, which provides that the jailer is responsible for the appointment and removal of jail personnel. Additionally, *Moody v. Duerson*, 280 Ky. 527, 133 S.W.2d 712 (1939), and two attorney general opinions were cited for the proposition that a deputy jailer holds office subject to the pleasure of the jailer, and "the matter of employment and contract is with the jailer himself." *Moody*, 133 S.W.2d at 713. The trial court also found that the appellant was a terminable-at-will employee and that his dismissal, based on numerous "incident" reports against him, did not violate any fundamental or well-defined public policy.

Appellant contends that as a matter of law his discharge was wrongful and that he was a county employee entitled to all of the benefits of the county grievance procedure. Additionally, he relies upon a jail manual, containing the rights and duties of jail employees, which has been used in the jail though not formally adopted by the fiscal court as required by 501 KAR 3:020(1). Lastly, he relies upon a federal court consent decree requiring that Lackey's predecessor, Edward Huck, promulgate rules for the jail's administration.

We need not address the relevance of the consent decree as it is clear that appellant was a county employee entitled to the benefits of established grievance procedures. He was appointed and paid through the Fiscal Court, sworn in by the County District Judge, and his appointment was approved by an executive order of the County Judge/Executive. The code provides that all county employment positions subject to specifically delineated exceptions are governed by the county personnel policies and procedures, none of which were followed herein.

Additionally, there are other, more specific, statutory provisions which govern appellant's procedural rights. KRS 441.055 (formerly compiled as KRS 441.011) requires the Corrections Cabinet to promulgate regulations establishing minimum standards for jails. Pursuant thereto, 501 KAR 3:020 was enacted, setting forth the procedures to be followed for the administration and management of jails. Section one (1) requires that the jailer develop and maintain an operations manual of policy and procedure which has been adopted by the fiscal court and filed with the Corrections Cabinet. The manual is required to include a personnel policy. Additionally, 501 KAR 3:040(8), (9) provide:

Section 8. Grievance Procedure. (1) Jail employees shall have access to the established grievance procedure of their respective county.

. . . . .

Section 9. Hiring Procedures. (1) The jailer shall have a written policy plan governing the selection, training, promotion, and retention of jail personnel.

Section three (3) defines "jail staff" to include deputy jailers. It logically being assumed that "jail employees" and "jail staff" are synonymous, section eight (8) clearly applies to appellant. The "established grievance procedure" of the county can only mean that which has been provided in the Campbell County Administrative Code, adopted in 1979 by the fiscal court. Though the Administrative Code does not explicitly mention jail employees as falling within its provisions relating to grievance procedures, 501 KAR 3:040(8) clearly grants jail employees the rights contained within its provisions.

In addition to the administrative regulation above, the jail manual explicitly provides that employees of the Campbell County jail have access to the county grievance procedure. Another section contains a requirement that the termination of a jail employee follow "due process," complete with written notice and hearing before the jailer and county personnel officer.[1] Al-

---

1. Appellant testified by deposition that just prior to being handed the envelope by Lackey he was

though this manual was not formally adopted by the fiscal court as required by the Kentucky Administrative Regulation, the evidence before the court firmly established that the manual was adopted de facto by being used in the jail and that all that remained was the technical requirement of adoption by the fiscal court.

The court's interpretation of KRS 71.060, as giving a jailer unbridled discretion in discharging his deputies, is erroneous as a matter of law. Prior to changes effective in 1984, this statute provided that, "They [deputies] may be removed at any time by the jailer." This sentence was deleted from KRS 71.060(1), and KRS 71.060(2) now provides that "[t]he jailer shall be responsible for the appointment and removal of jail personnel provided.... The fiscal court shall establish education and training requirements as permitted by regulations adopted pursuant to KRS 441.055." These regulations, as discussed hereinbefore, entitle deputies to certain due process procedures. The statute as it currently reads reflects a significant change in that it is clear the legislature has eliminated the jailer's power to discharge a deputy at will. Likewise, the court's reliance on the *Moody* case, *supra,* is misplaced, it having been decided prior to the amendment of KRS 71.060 and the legislative endorsement of the administrative regulations applicable to deputy jailers.

We would be reluctant to hold that the agreement relied upon by appellees and the trial court could effectuate a knowing and voluntary waiver of appellant's statutory rights even with language more explicit than that which it contained. As the contract violates statutory law it will not be enforced. *Zeitz v. Foley,* Ky., 264 S.W.2d 267 (1954). Moreover, we believe there is a need for a strong public policy against such a waiver where these rights underscore the more basic, fundamental right to be free from summarily arbitrary government action.

It appears from the evidence that his termination may have been based on numerous "incident reports" alleging his participation in prohibited conduct involving the inmates, none of these reports of which he had been aware until after his discharge. The use of these reports is further evidenced by a written statement to the fiscal court payroll department, dated October 11, 1985, signed by Lackey and by Earl Ping, notifying the department that appellant was being discharged for "unsatisfactory" job performance. These, of course, are factual matters not relevant on a motion for summary judgment. The appellees will have every opportunity to present evidence supporting their discharge of Said upon remand.

In summary, because 501 KAR 3:020 is clearly applicable to grant appellant certain procedural rights governing his discharge and because the jail manual, though not formally adopted by the fiscal court, expressly grants him rights under the county administrative code as well as rights to written notice and hearing, we reverse the entry of the summary judgment against appellant and direct the trial court to remand the matter for a hearing consistent with this opinion.

DUNN, Special Judge, concurs by separate opinion.

GUDGEL, J., dissents.

GUDGEL, Judge, dissenting:

It is clear that KRS 71.060(2), as amended in 1984, vests the Campbell County jailer with the power to appoint and remove all deputy jailers. It is undisputed that pursuant to the statute, the Campbell County jailer gave appellant written notice that he was being immediately terminated as a jail employee effective October 10, 1985. Moreover, at the time appellant received written notice of his termination, he was orally advised that he was being dismissed because he had engaged in numerous inci-

required to go alone upstairs to the detective's office where two police officers read him "Miranda" warnings and a list of accusations against him, though not stating that he was

under arrest. After denying most of them, he was permitted to leave. This hardly comports with traditional notions of meaningful "due process."

dents of prohibited conduct involving inmates.

However, in determining the propriety of the court's summary judgment, there is no need to address the several legal issues raised by appellant. Even if we were to assume that as a jail employee appellant was a county employee and therefore entitled to avail himself of the grievance procedures set forth in the Campbell County Administrative Code, it is clear that the court's summary judgment should nevertheless be affirmed.

Section 324 of that code permits an employee to be dismissed for certain enumerated reasons, including unsatisfactory job performance. Moreover, if the employee's conduct is severe enough, section 324.05(c) authorizes a summary dismissal of the employee as an initial disciplinary action. Although section 324.06 authorizes the dismissed employee to file a grievance and contest the dismissal "in accordance with section 360," the latter section requires the disciplined employee to present the grievance within three working days of the imposition of the disciplinary action. Here, it is undisputed that appellant was terminated on Thursday, October 10, 1985. However, he did not file a grievance proceeding until Wednesday, October 16, which was more than three working days later. Since appellant therefore failed to strictly comply with his duty under the administrative code to file a grievance within three working days of his discharge, he lost his right to contest the discharge. *Cf. Board of Adjustments of the City of Richmond v. Flood*, Ky., 581 S.W.2d 1 (1978). Further, the jail manual upon which appellant also relies was never legally adopted by the fiscal court. As the jail manual has no legal efficacy whatsoever, the majority's conclusion that appellant was entitled to notice and a hearing as specified in the manual is totally unwarranted.

For the reasons stated, I would affirm the court's summary judgment.

DUNN, Special Judge, concurring:

In concurring I respectfully emphasize the fact that the revised version of KRS 71.060 does not in any way diminish the jailer's power to appoint and remove jail personnel. This public policy is consistent with his status as an elected public officer. In the case of personnel removal, however, the provisions for certain due process procedures of the Campbell County Administrative Code, KRS 441.045, 501 KAR 3:020 and 501 KAR 3:040(8) & (9), must be followed.

Section 324 of the county administrative code not only provides for personnel demotion, suspension or dismissal, but also provides for a personnel grievance procedure in such event. That procedure is provided in Section 360 and requires various successive steps to be taken, the first of which is in section 361.01 as follows:

> The employee shall present the grievance to the employee's immediate supervisor within three working days of its occurrence or within three working days of knowledge of the occurrence by the employee. The supervisor shall then attempt to adjust the matter and shall respond to the employee within one working day.

Said's failure to take this first step is what our colleague relies upon in his dissent in deciding that Said lost his right to contest his discharge.

This position is wanting for two reasons. The first is that the section's procedure by its terms is so vague that it does not comport with the due process principles it attempts to uphold. It fails to provide whether the employee is to present the grievance to his immediate supervisor verbally or in writing and likewise it fails to provide whether the supervisor is to respond to the employee verbally or in writing. If it is assumed the grievance could be presented verbally and the supervisor could likewise respond verbally the task of deciding whether these provisions had been met would lead to an almost unresolvable swearing match evidentiary in establishing whether or not both had been complied with. Additionally, it does not provide a definition of what the grievance could consist of. Is a simple denial of charges against the employee sufficient or is a de-

tailed rebuttal in refutation required? The section's provisions fall woefully short of due process standards.

The second reason our colleague's dissent is wanting is that a review of the depositions and the proof before the trial court reveals that material issues of fact exist as to whether or not Said verbally presented a grievance to his supervisor and whether or not his supervisor attempted to adjust the matter and responded within one working day. Since material issues of fact are present, the trial court was in error in entering summary judgment.

I conclude that failure to comply with Section 361.01 is meaningless and that further evidentiary determination should be made as to whether the other settlement steps provided in the grievance procedures of section 360 provide due process and, if so, were they complied with by all the parties.

I otherwise concur with the result articulated in the opinion that the entry of summary judgment should be reversed and this case remanded to the trial court for hearings consistent with this opinion.